| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:17-CR-79 |
| | § | |
| MACEO STROTHER | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Maceo Strother's ("Strother") *pro se* Motion for

Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) and Appointment of Counsel (#147),

wherein he requests the court to grant him compassionate release based on his medical condition

and to appoint counsel to assist him in seeking compassionate release. The Government filed a

response in opposition to the motion (#151), to which Strother replied (#155).[1] United States

Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the

court deny Strother's motion for compassionate release. Having considered the pending motion,

the Government's response, Strother's reply, Probation's recommendation, the record, and the

applicable law, the court is of the opinion that the motion should be denied.

I.     Background

On May 10, 2017, a grand jury in the Eastern District of Texas returned a one-count

Indictment charging Strother with Felon in Possession of a Firearm, in violation of 18 U.S.C.

§ 922(g)(1). On August 2, 2018, Strother pleaded guilty to Count 1 of the Indictment pursuant

to a non-binding plea agreement. On April 17, 2019, the court sentenced Strother to 78 months'

---

[1] Also before the court is Strother's Motion for an Extension of Time (#154), wherein he asks the court for an extension of time to file a reply in support of his motion for compassionate release. The court GRANTS Strother's Motion for an Extension of Time (#154). As a result, the court deems Strother's reply to be timely filed and will consider it when ruling on his motion for compassionate release.

imprisonment, followed by a 3-year term of supervised release. Strother is currently housed at Federal Correctional Institution Texarkana ("FCI Texarkana"), located in Texarkana, Texas. His projected release date is February 11, 2025.

II.     Appointment of Counsel

Strother requests the appointment of counsel to assist him in filing a motion for compassionate release. There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D.

Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Here, Strother is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Strother provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, Strother has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Strother is 33 years old, and there is no indication that he is terminally ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under

certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Strother's motion for appointment of counsel is denied.

III.    Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior

to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of [his/her] facility to move for compassionate release on [his/her] behalf and then either exhaust [his/her] administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States*

*v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this instance, it appears that Strother has exhausted his administrative remedies. On April 6, 2020, Strother submitted a request for compassionate release to the warden of FCI Texarkana. On April 16, 2020, the warden denied Strother's request, construing it as a request for home confinement. Although Probation states that a "collateral contact with the [BOP] revealed there was no documentation of a reduction in sentence filed," the parties do not dispute that Strother submitted a request for compassionate release to the FCI Texarkana warden, which was denied, or that Strother properly exhausted his administrative remedies. In any event, although Strother appears to have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that he should be released from confinement.

B.     Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a

reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[2] *Id.*; *accord United States v. Keys*, ___ F. App'x ___, No. 20-61192, 2021 WL 1732282, at *1 (5th Cir. Apr. 30, 2021); *United States v. Cooper*, ___ F.3d___, No. 20-20485, 2021 WL 1661493, at *3 (5th Cir. Apr. 28, 2021).

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 2021 WL 1661493, at *3; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

as extraordinary and compelling.[3]   However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[4]   Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.   *Cooper*, 2021 WL 1661493, at *3; *Shkambi*, 993 F.3d at 392.   Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.   *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

---

[3] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:   (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.   U.S.S.G. § 1B1.13 cmt. n.1.

[4] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.   The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.   The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.   28 U.S.C. §§ 991(a), 994(a).   At present, the Commission has only one voting member.

1.  <u>Medical Condition</u>

In the instant motion, Strother, age 33, contends that he is eligible for compassionate release due to his medical problems. Specifically, Strother claims to be vulnerable to COVID-19 because he suffers from asthma and hypertension (high blood pressure). Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, Strother's Presentence Investigation Report ("PSR"), which was prepared on November 1, 2018, and last revised on March 13, 2019, indicates that he reported suffering from asthma, for which he used an inhaler and nebulizer, as needed. He was prescribed albuterol and Claritin while detained. Strother's BOP medical records confirm that he has a history of asthma since he was born and continues to suffer from it. Due to his history of asthma and shortness of breath, Strother had a chest x-ray on December 22, 2020, which showed no abnormalities. The findings of the radiologist, Farhad Khorashadi, M.D. ("Dr. Khorashadi"), state: "The cardiomediastinal silhouette is within normal limits. Lungs are clear. No pleural effusions. Bony elements are within normal limits for age. No acute osseous abnormality." Dr. Khorashadi's impression of Strother's condition is that he has "no acute cardiopulmonary disease," his "[l]ungs

are clear," and his "[h]eart size [is] normal." Strother is prescribed an albuterol inhaler to use as needed to prevent and relieve asthma attacks. He is also prescribed a mometasone furoate inhaler to use twice daily to control his asthma.

Strother further claims that he suffers from hypertension. Strother's most recent blood pressure readings—138/92 on January 7, 2021, and 136/88 on December 22, 2020—indicate, according to the Centers for Disease Control and Prevention ("CDC"), that he is at risk for high blood pressure but does not actually have high blood pressure.[5] He has also experienced heart arrhythmia and previously had deep vein thrombosis—i.e., a blood clot—in his left lower leg, which is currently in remission. Strother's medical records further reveal that he is prescribed apixaban, a blood thinner used to treat and prevent blood clots; carvedilol, a beta blocker used to treat high blood pressure; and diltiazem, a calcium channel blocker used to treat high blood pressure and chest pain. Based on his medical status, Strother is classified as a BOP medical Care Level 2 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical conditions can be managed through routine, regularly scheduled appointments for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

None of Strother's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, Strother's conditions

---

[5] According to the CDC, a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

are well managed with medication. *See id.* The court acknowledges that some of Strother's underlying medical conditions, according to the CDC website, can make him more likely to become severely ill should he contract COVID-19[6]; nonetheless, such commonplace maladies, like asthma and hypertension, do not make Strother's case "extraordinary." *See id.* at 434.

Indeed, according to the CDC, 20.4 million adults in the United States, 7.7% of the adult population, have asthma. Due to its prevalence, asthma cannot be deemed "extraordinary" in order to merit compassionate release. *See United States v. Thompson*, No. 3:18-CR-0573-B-11, 2021 WL 1966847, at *3 (N.D. Tex. May 17, 2021) (finding that a defendant's asthma, which was treated with an albuterol inhaler, did not rise to the level of extraordinary and compelling circumstances warranting compassionate release); *United States v. Holley*, No. 4:15-CR-265-4, 2021 WL 1581557, at *3 (S.D. Tex. Apr. 22, 2021) (denying compassionate release where the 28-year-old defendant claimed he had an increased risk of serious illness resulting from COVID-19 due to his asthma); *United States v. Pagan Zapata*, No. 3:18-CR235-S, 2020 WL 4464660, at *1 (N.D. Tex. Aug. 3, 2020) (finding that the defendant's long term asthma, which was being treated with an inhaler, did not merit compassionate release). Likewise, because hypertension is a common affliction, Strother's hypertension does not meet the extraordinary and compelling standard. *See Thompson*, 984 F.3d at 434 (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at

---

[6] In relevant part, the CDC states that adults with chronic lung diseases (including asthma) and heart conditions (such as hypertension) can be more likely to become severely ill from COVID-19.

*2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence).

In this instance, Strother's BOP records reveal that he is housed in general population, has no medical restrictions, has regular duty work assignments, is cleared for food service, and his current work detail is as an education orderly. Thus, Strother has failed to establish the existence of medical afflictions that would constitute extraordinary and compelling reasons to reduce his sentence.

In any event, "[c]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct and has a criminal history, the district court has discretion to deny compassionate release under the circumstances. *Id.* at 693-94; *accord Keys*, 2021 WL 1732282, at *1 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal.").

2.   Other Reasons

Strother also raises other arguments in support of his request for compassionate release. Specifically, in his reply, he asserts that compassionate release is warranted due to his post-

sentence rehabilitation. He further claims that the court should grant his request for compassionate release due to the presence of COVID-19 in prison.

### a.   Rehabilitation

Strother maintains that his post-sentence rehabilitation, evidenced by the courses and programs he has completed, establishes extraordinary and compelling reasons for compassionate release. Although Strother provides the court with a list of commendable achievements and goals, he has not presented sufficient grounds for compassionate release. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).

b.    COVID-19

Moreover, Strother expresses concerns regarding the spread of COVID-19 among the prison population.  Nevertheless, as of May 27, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,097) and 0 staff members at FCI Texarkana as having confirmed positive cases of COVID-19, 565 inmates and 88 staff members who have recovered, and 1 inmate who succumbed to the disease.  Indeed, according to Strother's medical records, he tested positive for COVID-19, was placed in isolation, received treatment, and has now recovered from the virus.  Thus, it appears that the facility where Strother is housed is handling the outbreak appropriately and providing adequate medical care.

Although Strother expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Strother, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or

the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Strother, have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release.")); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is

infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Furthermore, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 182,690 doses of the vaccine. According to www.bop.gov, FCI Texarkana, where the defendant is housed, has fully inoculated 719 inmates and 97 staff members. Strother's BOP medical records, however, reflect that he refused the Johnson & Johnson COVID-19 vaccine on April 13, 2021, without any suggestion that it was medically contraindicated. Notably, courts have denied compassionate release where, as here, the inmate has refused the COVID-19 vaccine. *See United States v. Greenlaw*, No. 1:18-CR-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("To reward [the defendant] for his vaccination refusal would create a perverse incentive for defendants like [the defendant] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions."); *United States v. Pruitt*, No. 3:14-CR-0384-B-1, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021) (finding that the defendant "cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because he faces an increased risk of severe illness or death should he contract COVID-19 on the other hand"); *United States v. Jackson*, No. CR 07-40-2, 2021 WL

1145903, at *2 (E.D. Pa. Mar. 25, 2021) (holding that because the defendant refused the COVID-19 vaccine, she "voluntarily declined to 'provide self-care' and mitigate her risk of a severe COVID-19 infection"); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021) ("Defendant cannot establish that his conditions are exceptional and demand immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety."); *United States v. King*, No. 16-CR-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("In declining vaccination[, Defendant] declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *accord United States v. Braxton*, No. 4:16-CR-117, 2021 WL 1721741, at *5 (E.D. Tex. Apr. 30, 2021). Similarly, Strother cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated.

Therefore, under the circumstances, the court finds that Strother has failed to establish that his medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served and release him from prison.

## C.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Keys*, 2021 WL 1732282, at *1; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. Strother's offense of conviction stems from his possession of a firearm while being a convicted felon.

17

According to Strother's PSR, on March 24, 2017, a Plano, Texas, police officer observed Strother driving a vehicle with an expired temporary license tag. The officer conducted a traffic stop, and Strother was unable to produce his license or identification. Strother also falsely identified himself as Glen Robbins and said his date of birth was February 19, 1988. The officer was unable to verify Strother's identification and asked to call Strother's girlfriend, the owner of the vehicle. Strother declined and told the officer to "just take [him] to jail." The officer obliged and arrested Strother for driving without a license. A search of Strother's person revealed a Macy's receipt in another person's name—R.J. The officer requested a drug-detection dog, and the dog alerted to the presence of drugs in the vehicle being driven by Strother. A search of vehicle revealed marijuana seeds on the vehicle's floorboard, as well as a Macy's credit application using R.J.'s identifying information and another application for a Macy's credit card with a $2,000 limit in the vehicle's cup holder. Officers located a Palmetto State Armory, Model PA-15, multi-caliber rifle bearing serial number LW171094 and two ammunition magazines loaded with 58 rounds of .223 caliber ammunition in the cargo area of the vehicle.

Moreover, Strother failed to accept responsibility for his criminal acts and even obstructed justice to avoid the consequences of his crime. Specifically, despite pleading guilty under oath and admitting to the information contained in the Factual Basis, Strother filed a motion to withdraw his guilty plea on November 19, 2018, claiming that he was innocent because he was unaware a firearm was in his presence and that his plea was involuntary due to ineffective assistance from his counsel.

On January 14, 2019, Strother's former attorney filed an affidavit with the court stating that he had reviewed around 12 phone calls between Strother and his girlfriend, Merci. During

those calls, Strother asked Merci to take responsibility for the firearm, talked about his ability to convince her to take responsibility for the firearm, and described his lack of concern about the case because she would be taking responsibility for the firearm. His attorney's affidavit detailed the discussions he had with Strother, including one discussion in which he warned Strother against providing false testimony and another in which Strother said that he pleaded guilty to protect his attorney from being charged with presenting false testimony.

That same day, Strother filed his Response in Opposition to the Government's Purported Evidence Discrediting Strother's Assertion that He was Unaware of the Firearm in the Vehicle's Cargo Area (#115). In the response, Strother claimed that evidence of pictures on a cell phone of a firearm were not true images of the firearm found in the vehicle during his arrest. He further asserted that it is not illegal to possess pictures of firearms, that he is "an American, who like any other American is fascinated by guns," and that his text messages discussing the purchase or sale of a firearm were not related to the firearm found in the vehicle. Strother also claimed he was innocent, stating that he only instructed his girlfriend to "'tell the truth' about the situation and not to lie about anything." He asserted, "[i]n this case, the truth is that the vehicle belonged to [his] girlfriend and only [she] could have had knowledge of the vehicle's cargo area contents."

On January 22, 2019, Strother filed an affidavit purportedly completed by Asa E. Mercedes ("Mercedes"), in which she claimed that she had obtained a gym bag with a disassembled firearm from Carlos Clark ("Clark") and that she had left the bag in her car for several weeks. After the firearm had been confiscated by law enforcement as a result of Strother's arrest, Mercedes said that she provided Clark with a claim number so that he could retrieve the firearm but he never contacted law enforcement to do so. She claimed that she tried to contact

Clark on multiple occasions but he blocked her calls.  Mercedes asserted that she later learned that Clark had died.  She concluded her affidavit by stating that she "assume[s] responsibility of the gun that was taken out of the trunk of my vehicle on March 24, 2017."

The court denied Strother's motion to withdraw his guilty plea on April 8, 2019 (#126).  As a result of his actions, at sentencing, Strother was denied any reduction for acceptance of responsibility and was assessed two additional levels for obstruction of justice.

Strother's criminal history includes prior convictions for aggravated robbery with a deadly weapon, possession of marijuana, possession with intent to distribute a controlled substance (cocaine), and possession of a firearm in furtherance of a drug-trafficking crime.  His conviction for aggravated robbery entailed his robbery of a restaurant while brandishing a handgun and demanding money.  Strother also violated the conditions of previous terms of probation and supervised release.  In fact, Strother was on supervised release at the time he committed his offense of conviction.  Moreover, Strother has a history of using marijuana, codeine, and ecstasy. In a BOP medical record, dated February 20, 2020, he reported using marijuana daily within the previous year.  Strother has been assessed by BOP officials as posing a medium risk of recidivism. In view of the nature and circumstances of his offense of conviction, his criminal history, and his history of substance abuse, the court cannot conclude that Strother's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Strother compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his

sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Strother after he has served approximately 35% of his 78-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Strother's track record is similarly a poor one. In this instance, there is no reason to believe that Strother would not revert to drug dealing, abusing drugs, and engaging in other criminal activities while illegally armed with firearms if released from prison at this time.

IV.    Conclusion

In sum, Strother has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Strother's *pro se* Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) and appointment of counsel (#147) is DENIED.

SIGNED at Beaumont, Texas, this 27th day of May, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE